**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO,
EASTERN DIVISION AT YOUNGSTOWN**

| | |
|---|---|
| BRUCE KECK, | : |
|     *Plaintiff*, | : |
| v. | : Case No. |
| NEW DAY ENTERPRISES, INC., p.k.a. and/or d.b.a. API Outdoors, Inc., | : Judge |
|     and | : |
| GANDER MOUNTAIN COMPANY, | : Magistrate Judge |
|     and | : |
| API OUTDOORS, Inc., | : |
|     and | : PLAINTIFF'S COMPLAINT |
| OUTLAND SPORTS, INC., | : Jury Demand Endorsed Hereon |
|     *Defendants*. | : |

The plaintiff, complaining of the defendants, alleges as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this action, pursuant to 28 U.S.C. §1332, because the amount in controversy exceeds $75,000.00 (exclusive of interest and costs) and diversity of citizenship exists between the parties.

2. Pursuant to 28 U.S.C. § 1391, venue is properly laid in the Northern District of Ohio, Eastern Division at Youngstown, because the events and/or omissions giving rise to the claims occurred in Mahoning County, Ohio.

**PARTIES**

3. Plaintiff, Bruce Keck, is a citizen of the United States of America and resides in Poland, Mahoning County, Ohio.

4. Defendant, New Day Enterprises, Inc., p.k.a. and/or d.b.a. API Outdoors, Inc., is a Minnesota corporation with its principal place of business located in Windom, Minnesota.

5. Defendant, Gander Mountain Company, is a Minnesota corporation with its principal place of business located in St. Paul, Minnesota. It operates retail stores throughout the United States and is in the business of selling and distributing various products, including sporting goods and other related products, to the general public.

6. Defendant, API Outdoors, Inc., is a Louisiana corporation with its principal place of business located in Tallulah, Louisiana

7. Defendant, Outland Sports, Inc., is Missouri corporation with its principal place of business located in Kansas.

## FACTS COMMON TO ALL COUNTS

8. The defendants are manufacturers, as defined in Ohio Revised Code (R.C.) § 2307.71.

9. The defendants' design, manufacture, sell, and distribute hunting equipment, including safety harnesses for hunting tree stands (a.k.a. deer stands), used by consumers in the State of Ohio and throughout the United States.

10. The safety harness was designed, manufactured, sold, and/or distributed by the defendants.

11. In approximately 2005, the plaintiff's friend, Gary Lewis, purchased the safety harness from Gander Mountain Company and gave it to the plaintiff as a gift.

12. Prior to purchasing the safety harness, an agent of the defendants and/or a Gander Mountain employee advised Gary Lewis that the safety harness was suitable and proper for preventing injuries from falls from a deer stand.

13. When the plaintiff received it, the safety harness was contained in the original, unopened packaging. Unbeknownst to the plaintiff, however, the safety harness was defective. Primarily, the stitching that connected the tether to the safety harness was defectively and ineffectively designed and manufactured, rendering the safety harness unreasonably dangerous.

14. Between the date on which the plaintiff received the safety harness as a gift, in 2005, and November 12, 2011, the plaintiff had used the safety harness on no more than five occasions.

15. On or about November 12, 2011, the plaintiff was using the safety harness when, without warning, the defect caused it to malfunction. Prior to, and at, this time, the safety harness was in the same or similar condition as when it was purchased by the plaintiff.

16. As a direct result, the plaintiff fell more than 15 feet from his tree stand and sustained serious injuries, including severe brain trauma, a collapsed lung, damage to his optic nerve and rotator cuff, shredding of his shoulder nerves, and multiple fractures of his skull, vertebrae, orbital bones, ribs, and left clavicle. He has also suffered surgical and

medication-related complications, severe permanent personal injuries, physical and mental pain and suffering, loss of earnings and impairment of earning capacity. Additionally, the plaintiff has incurred significant medical expenses in excess of $300,000, which continue to increase.

## COUNT 1
## MANUFACTURER'S STRICT LIABILITY

17. The plaintiff incorporates the preceding paragraphs.

18. Pursuant to R.C. Chapter 2307, the safety harness was defective in manufacture and design.

19. The safety harness was also defective, pursuant to R.C. Chapter 2307, due to inadequate warning, instruction, and for failure to conform to representations made by the defendants when leaving their control.

20. At the time of the manufacture, distribution and sale of the safety harness by the defendants, the safety harness was in a defective condition and unreasonably dangerous when put to a reasonably anticipated use in at least the following respects:

   A. The safety harness failed to provide adequate safety devices and defectively designed and stitched to prevent injury from falling;

   B. The safety harness was designed, manufactured, and/or sold without adequate instructions or warning as how to prevent injury.

   C. The safety harness was designed, manufactured, and/or sold without adequate instructions or warning as to the proper way to use the safety harness;

   D. The safety harness was designed, manufactured, and sold without adequate instructions or warnings for use and maintenance of the safety harness to prevent injury;

   E. The safety harness failed to contain any warnings that the safety harness was incapable of supporting persons weight in the event of the fall from the stand;

   F. The manufacturers, and/or distributors and/or the sellers of the safety harness failed to warn Plaintiff that said safety harness was not suitable for use to support him on a deer stand in the event he fell;

   G. The manufacturers and/or distributors and/or sellers of the safety harness continued to sell the safety harness when the Defendants knew or through the exercise of reasonable care, should have known that the safety harness was not fit for use by the Plaintiff or other consumers; and

   H. Such further and additional defects as discovery and the evidence reveal.

21. The defective and unreasonably dangerous condition of the safety harness existed at the time the subject safety harness was designed, manufactured, distributed and sold by the defendants.

22. The safety harness was being used in the manner reasonably anticipated at the time the Plaintiff was injured on/or about November 11, 2011.

23. As a direct and proximate result of the aforesaid occurrence, the plaintiff sustained serious and permanent injuries as set forth herein.

24. As a direct result of the injuries, the plaintiff has been caused to undergo reasonable and necessary care and treatment to cur cost associated with that treatment, and will continue to require such treatment to cur the cost thereof in the future.

25. The defendants knew or reasonably should have known that death or severe bodily injury was substantially likely to occur as a result of a defective and unreasonably dangerous condition of the safety harness as described above.

26. The defendants' conduct was a direct and proximate cause of the plaintiff's injuries.

27. The defendants' conduct also constituted malice, ill will, a conscious and flagrant disregard of the rights and safety of persons who might be harmed by the safety harness.

## COUNT 2
## BREACH OF EXPRESS WARRANTY

28. The plaintiff incorporates the preceding paragraphs.

29. Prior to the plaintiff's purchase of the safety harness, the defendants induced its purchase by expressly warranting to the plaintiff that consumers (including him) could expect to safely use such a safety harness for its intended purpose. Specifically, the defendants expressly warranted that their safety harness would keep its user securely fastened to a tree and prevent the user from falling from the tree.

30. The defendants publicly communicated this express warranty in a manner directed to the attention of the public and ultimate consumers, including the plaintiff. For example, via advertisements, the Internet, and descriptions of the product.

31. In using the safety harness, the plaintiff relied upon the skill and judgment of the defendants and their express warranty. However, the express warranty was not true. The safety harness was unfit, unsafe, and unusable for its intended purpose.

32. The defendants breached their express warranty and, as a direct and proximate result, the plaintiff suffered the injuries set forth in this complaint.

33. The defendants' conduct also constituted malice, ill will, a conscious and flagrant disregard of the rights and safety of persons who might be harmed by the safety harness.

## COUNT 3
## BREACH OF IMPLIED WARRANTY OF FITNESS

34. The plaintiff incorporates the preceding paragraphs.

35. The defendants impliedly warranted that the safety harness was fit for its intended purpose; keeping its user securely fastened to a tree and preventing the user from falling from the tree.

36. In using the safety harness, the plaintiff relied upon the skill and judgment of the defendants and their implied warranty of fitness. However, the implied warranty was not true. The safety harness was unfit, unsafe, and unusable for its intended purpose.

37. The defendants breached their implied warranty of fitness and, as a direct and proximate result, the plaintiff suffered the injuries set forth in this complaint.

38. The defendants' conduct also constituted malice, ill will, a conscious and flagrant disregard of the rights and safety of persons who might be harmed by the safety harness.

## COUNT 4
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

39. The defendants impliedly warranted that the safety harness was of merchantable quality, fit, safe, and in proper condition for the ordinary use for which safety harnesses are designed and used.

40. The defendants also impliedly warranted that the safety harness was of merchantable quality, fit, safe, and in proper condition for its intended purpose; keeping its user securely fastened to a tree and preventing the user from falling from the tree.

41. In using the safety harness, the plaintiff relied upon the defendants' implied warranty of merchantability. However, the safety harness was not of merchantable quality and was unfit, unsafe, and unusable for its intended purpose.

42. The defendants breached their implied warranty of merchantability and, as a direct and proximate result, the plaintiff suffered the injuries set forth in this complaint.

43. The defendants' conduct also constituted malice, ill will, a conscious and flagrant disregard of the rights and safety of persons who might be harmed by the safety harness.

## COUNT 5
## NEGLIGENCE

44. The plaintiff incorporates the preceding paragraphs.

45. In approximately 2005, the plaintiff and his friend, Gary Lewis, relied upon the advice, instruction, and expertise of an agent of the defendants and/or a Gander Mountain employee as to the appropriate and safe, type, style and design of the safety harness

46. The defendants owed the plaintiff a duty of care and the defendants breached that duty. Said breach includes a failure to: a) warn of the inherent safety risk in using the subject safety harness; b) warn of the potential dangers and defects of the safety harness; c) warn of the potential consequences and injuries that could result from the use of the safety harness; d) provide adequate instructions for using the safety harness; e) properly design the safety harness so as to avoid or minimize the extreme risks to its users; and f) warn of the potential for sudden and catastrophic failure and/or malfunction of the safety harness.

47. The defendants' breach constitutes negligence and directly and proximately caused the plaintiff to suffer the injuries set forth in this complaint in the following ways:

    A. The defendants negligently and carelessly failed to design, manufacture and sell the safety harness with appropriate safety devices with and with stitching that would not come apart so as to prevent injuries from falling;

    B. The defendants negligently and carelessly designed, manufactured, distributed and sold the safety harness without instructions or warnings about the safe and appropriate use of the safety harness;

    C. The defendants negligently and carelessly failed to heed industry warnings, customs and practices of other manufacturers in the industry and breached the standard of care by failing to properly stitch and assemble the safety harness to prevent falls.

    D. The defendants negligently and carelessly failed to test, study and research the subject safety harness and possible ways in which to position and to assemble the safety harness to prevent maximum forces on the tether that was preventing the plaintiff and others similarly situated from falling.

    E. The defendants negligently and carelessly designed, manufactured, distributed and sold the subject safety harness without instruction or warnings for use and maintenance of the safety harness to prevent injuries;

    F. The defendants negligently and carelessly failed to recall or retrofit the subject safety harness so as to make it reasonably safe.

    G. The defendants negligently and carelessly failed to warn of the dangerous condition of the safety harness; and

    H. Such further and additional acts and omission as discovery and the evidence reveal.

WHEREFORE, The plaintiff prays that this Honorable Court will render judgment in favor of the plaintiff and against the defendants, jointly and severally, as follows:

1. For compensatory damages in the amount in excess of $75,000.00;

6

2. For special damages, in excess of $2,200,000, to fully compensate the plaintiff for all injuries and damages, both past and present, including but not limited to, past and future medical expenses, costs for past and future rehabilitation and/or home health care, lost income, permanent disability, including permanent instability and loss of balance, and pain and suffering;

3. For attorneys' fees, expenses, and costs of this action;

4. For punitive damages;

5. For pre-judgment and post-judgment interest in the maximum amount allowed by law;

6. For other such relief as this Court considers necessary, just, proper, fair, and/or equitable.

## JURY DEMAND

The plaintiff demands a trial by Jury on all counts triable to a Jury.

Respectfully submitted,

| | |
|---|---|
| /s/ *Mark W. Biggerman* | Steve W. Tater (0015429) |
| Mark W. Biggerman (0064092) | Steve W. Tater |
| mark@mblegal.com | 5031 Turney Road |
| William A. Carlin (0009144) | Garfield Heights, Ohio 44125 |
| wcarlinesq@aol.com | (216) 518-2200 |
| Carlin & Carlin | (216) 518-2246 {fax} |
| 29325 Chagrin Blvd., Suite 305 | stevetater1234@gmail.com |
| Pepper Pike, Ohio 44122 | |
| (216) 831-4935 | |
| (216) 831-9526 {fax} | |

*Attorneys for The plaintiff*

7