PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRUCE KECK, | ) | |
| | ) | CASE NO.  4:13CV0185 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| GANDER MOUNTAIN COMPANY, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF No. 95] |

Pending is Defendants Gander Mountain Company and Kinsey's Archery Products, Inc.'s Motion for Sanctions for Spoliation of Evidence (ECF No. 95) pursuant to Fed. R. Civ. P. 37 and/or the Court's inherent authority.  According to these defendants, Plaintiff and Plaintiff's attorneys' knowing spoliation of critically probative evidence has significantly prejudiced their ability to defend themselves against Plaintiff's products liability claims, requiring the Court to grant them a judgment dismissing all of Plaintiff's claims.  ECF No. 95 at PageID #: 467.  In the alternative, these defendants summarily request that Plaintiff's expert, Dale J. Cagwin, be prevented from testifying.  ECF No. 108 at PageID #: 1280.  The Court has been advised, having reviewed the parties' briefs and submissions, and the applicable law.  The Court has also considered the entire record in this matter, and being otherwise advised in the premises, denies the motion.

(4:13CV0185)

# I.

The Holler family, who owned the land Plaintiff Bruce Keck hunted on in Poland, Ohio, gave Plaintiff permission to hunt there "[f]or all of [his] life" and apparently did not mind his tree stand being on their property.  Deposition of Plaintiff (ECF No. 100-1) at PageID #: 838, Page 141.  Sometime after 3:30 p.m. on November 12, 2011, Plaintiff fell from the tree stand he was crossbow hunting from, suffering injuries.  Plaintiff testified he was wearing the safety harness when he fell from the tree stand, though he admitted it was his first time wearing one.  ECF No. 100-1 at PageID #: 840, Page 146 and PageID #: 841, Page 153.  In recounting how he secured himself to the tether, Plaintiff testified:  "I would go up the ladder.  Step up onto the platform of the tree stand . . . And I would just turn right around, sit down, lock in."  ECF No. 100-1 at PageID #: 847, Page 176.  Plaintiff clarified by "lock in" he meant "connect the safety harness to the tether."  ECF No. 100-1 at PageID #: 847, Page 177.

Plaintiff regained consciousness shortly after 7:00 p.m. when his friend, Gary Lewis, called him on his cell phone.  Plaintiff testified his only memory of the fall is what occurred after Mr. Lewis called him that night.  ECF No. 100-1 at PageID #: 848, Pages 179-80.

Paramedics responded and Plaintiff was transported by ambulance to St. Elizabeth's Hospital in Youngstown, Ohio.  Roy Kohler was the first of the EMS personnel to arrive.  Deposition of Roy H. Kohler (ECF No. 101-1) at PageID #: 929.  He recalls seeing "one-inch-thick strap[s]" "wrapped around [Plaintiff]" "underneath his armpits, his waist."  ECF No. 101-1 at PageID #: 939-40.  Mr. Kohler speculated they removed the straps from Plaintiff in

(4:13CV0185)

the ambulance. ECF No. 101-1 at PageID #: 943. A separate member of the EMS team, John Guy, only saw Plaintiff when he was inside the ambulance. Mr. Guy testified: "I can say without a doubt that was not on him" when shown a picture of Plaintiff in a safety harness. Deposition of John S. Guy (ECF No. 105-1) at PageID #: 1175.

At St. Elizabeth's Hospital, Plaintiff stated he fell from the ladder of the tree stand. Dr. Brian Gruber recorded that "he fell from last 2 steps of his ladder." ECF No. 95-4 at PageID #: 512. Dr. Heath Dorion recorded Plaintiff "fell off ladder while in a tree stand." ECF No. 95-4 at PageID #: 514. Dr. William Trachtman recorded Plaintiff "thinks he may have left his harness off." ECF No. 95-4 at PageID #: 515.

The staff at St. Elizabeth's Hospital took a blood sample for alcohol determination at 8:20 p.m. on November 12, 2011. The lab report gave a serum alcohol concentration of 110 mg/dL. ECF No. 95-4 at 511. Defendants' expert toxicologist, Alfred E. Staubus, Pharm.D., Ph.D., states that 110 mg/dL amounts to a 0.093 Blood Alcohol Level (BAC) based upon a man of Plaintiff's size. Opinion Letter of Alfred E. Staubus at Pgs. 4-5 (ECF No. 95-5 at PageID #: 537-38). Dr. Staubus further states that Plaintiff "had to have to consumed a total of 7.7 to 9.9 12-ounce cans of Yuengling beer (4.4% v/v) to have had a blood-alcohol concentration of 0.093 g/dL at 8:20 p.m." ECF No. 95-5 at PageID #: 538. Plaintiff testified, however, the only alcohol he consumed that day was "about a half of the can, three-fourths of the can at the very most" of Yuengling beer. ECF No. 100-1 at PageID #: 840, Page 148.

(4:13CV0185)

On Super Bowl Sunday, February 5, 2012, Plaintiff and Mr. Lewis went to inspect the tree stand leading to an "ah-hah" moment.  ECF No. 100-1 at PageID #: 849, Pages 183-85;Deposition of Gary J. Lewis (ECF No. 97-1) at PageID #: 693, Pages 139-40.  Since they saw a piece of the tether still in the tree, Mr. Lewis "went up" the tree and "used a Leatherman to loosen up that carabineer" that would have attached the safety harness, tether, and tree belt.  ECF No. 100-1 at PageID #: 849, Page 184.  The "chunk of the strap" Mr. Lewis brought down from the tree that day is a cleanly severed piece of the right D-ring accessory strap from the safety harness.  This was the first time Plaintiff came to believe that his fall was due to the failure of the harness and not his own actions.  In Plaintiff's words, "Oh, my gosh.  I -- I didn't screw up.  I did lock in."  ECF No. 100-1 at PageID #: 849, Page 185.

On March 13, 2012, Plaintiff, Mr. Lewis, and Attorneys William A. Carlin and Steve W. Tater visited the location where Plaintiff fell.  Multiple photographs were taken.  At that time Attorney Carlin took custody of the safety harness and the detached strap with D-ring, and placed them in a locked evidence storage room.  Affidavit of William A. Carlin (ECF No. 99-1) at PageID #: 793, ¶¶ 2, 3, and 5.

Plaintiff's counsel were concerned the tree stand, straps, and safety belt could be stolen out of the tree, so Attorney Carlin "concluded that the prudent course of action would be to return and take down the tree stand, straps, and safety belt for preservation."  ECF No. 99-1 at

(4:13CV0185)

PageID #: 793, ¶ 6. On March 28, 2012,[1] Plaintiff, Mr. Lewis, and Attorneys Carlin and Tater again visited the location where Plaintiff fell. ECF No. 97-1 at PageID #: 694, Page 145. Attorneys Carlin and Tater invited Mr. Lewis to the tree stand and had Mr. Lewis and Plaintiff stage reenactments while Attorney Carlin took photographs and video. ECF No. 97-1 at PageID #: 690-91, Pages 126-131.[2] Plaintiff testified it was Attorneys Carlin and Tater's idea to take the tree stand down. ECF No. 100-1 at PageID #: 857-58, Pages 217-18. At the direction of Attorneys Carlin and Tater, Mr. Lewis disassembled the tree stand seat and platform, and gave it to Attorney Carlin. ECF No. 97-1 at PageID #: 690-91, Pages 126-31. Mr. Lewis had no understanding as to why the tree stand was being taken down and disassembled, and was not told why he was to do this task. ECF No. 97-1 at PageID #: 690, Page 127. Two videos were taken of the disassembly of the tree stand and safety belt. ECF No. 99-1 at PageID #: 793, ¶ 8. The tree stand took approximately 10 minutes to disassemble and it left indentations and markings from the straps, as well as fragments of the straps in the tree. ECF No. 99-1 at PageID #: 793, ¶ 10. No measurements were taken to indicate how high the tree stand was from the ground. ECF No. 97-1 at PageID #: 691, Page 130. ECF No. 99-2 is a photograph of the tree stand taken that day. Dozens of other photographs were also taken of the tree stand, straps, and safety belt. ECF No. 99-1 at PageID #: 793, ¶¶ 9. ECF No. 95-7 provides twelve (12) of the pictures taken that

---

[1] Defendants state the date was April 28, 2012. *See, e.g.* ECF No. 95 at PageID #: 473. Attorney Carlin attests, however, that the date was March 28, 2012. ECF No. 99-1) at PageID #: 793, ¶ 7.

[2] On February 14, 2014, Plaintiff provided Defendants with the photographs taken on March 28, 2012. ECF No. 108 at PageID #: 1268.

(4:13CV0185)

day.  Attorney Carlin took custody of the tree stand, straps, and safety belt, and placed them in a locked evidence storage room.  ECF No. 99-1 at PageID #: 793, ¶ 11.  It is undisputed that no other party or potential defendant was notified of these site visits by Plaintiff's attorneys.

A photograph of the safety harness produced by Plaintiff shows a multi-color "API Outdoors"[3] tag sewn onto the harness.  ECF No. 95-6.  Mr. Lewis testified he originally purchased the harness at a Gander Mountain Company location before giving it to Plaintiff as a gift in 2011.  ECF No. 97-1 at PageID #: 667-68, Pages 37-39; ECF No. 100-1 at PageID #: 841, Pages 151-52.  Defendant Kinsey's Archery Products, Inc. is a wholesale distributor of various sporting goods to sporting goods dealers, including Gander Mountain Company.  Kinsey's Answer (ECF No. 49) at PageID #: 284, ¶ 2; ECF No. 146 at PageID #: 2604, ¶ 2.

On January 24, 2013, Plaintiff filed a Complaint (ECF No. 1) for products liability for the alleged failure of the safety harness and strap with D-ring.  Plaintiff is represented by Attorneys Carlin and Tater, as well as Attorney Mark W. Biggerman.  A Second Amended Complaint (ECF No. 37) was filed on August 19, 2013.  Gander Mountain Company was served with summons and complaint on or about January 28, 2013.  *See* Waiver of the Service of Summons (ECF No. 3).  Kinsey's Archery Products, Inc. was served on or about August 19, 2013.  *See* Waiver of the Service of Summons (ECF No. 46).  A total of eight (8) defendants were named in the lawsuit.

---

[3]  API Outdoors, Inc. was a named defendant.  It was incorporated in the state of Louisiana and manufactured hunting equipment.  Stipulation as to Undisputed Facts (ECF No. 146) at PageID #: 2604, ¶ 3.  On August 14, 2014, Plaintiff dismissed without prejudice his claims against API Outdoors, Inc.  *See* Stipulation (ECF No. 81).

(4:13CV0185)

The remaining defendants are Gander Mountain Company, Kinsey's Archery Products, Inc., and Outland Sports, Inc.[4]  Gander Mountain Company' Crossclaim (ECF No. 43) against Kinsey's Archery Products, Inc. also remains pending.

The moratorium on formal discovery ended on November 20, 2013 when the Court conducted a Case Management Conference.  *See* Case Management Conference Scheduling Order (ECF No. 29) at PageID #: 177; Minutes of Proceedings dated November 20, 2013.

On October 27, 2014, counsel for Defendant Gander Mountain Company emailed Attorney Tater to request a site inspection.  Two days later, Attorney Tater reported via email to Defense counsel that the tree stand ladder and tether[5] had been stolen some time before October 2014.  ECF No. 95-2.[6]

---

[4]  On December 31, 2013, the Court granted without opposition Plaintiff's Motion for Default Judgment on His Second Amended Complaint Against Defendant Outland Sports, Inc. (ECF No. 64) as to the issue of liability alone.  *See* Order (ECF No. 68).  An involuntary bankruptcy was filed against Outland Sports, Inc. in 2003.  It was dissolved in 2004.  In 2010, a Final Decree of Chapter 7 Bankruptcy regarding Outland Sports, Inc. was issued by the United States Bankruptcy Court for the District of Kansas.  ECF No. 146 at PageID #: 2604, ¶ 4.

[5]  Defendants state without explanation that the tree belt is misidentified as the tether in Attorney Tater's email message.  ECF No. 95 at PageID #: 474.

[6]  Plaintiff's attorneys, however, brought with them to Mr. Cagwin's deposition in April 2015 the very strap that Attorney Tater claimed was stolen.  Deposition of Dale J. Cagwin (ECF No. 96-1) at PageID #: 608.  Regarding the ladder, there is no evidence that it has been destroyed.  The only thing for sure is that it is no longer in its previous location and Plaintiff is unaware of its present location.  ECF No. 99 at PageID #: 785.  Many of the photographs served on Defendants, however, include the ladder.

(4:13CV0185)

Mr. Cagwin, Plaintiff's expert, issued his supplemental report on January 15, 2015.  The report includes measurements of a tree stand Mr. Cagwin, Plaintiff, Mr. Lewis, and Plaintiff's attorneys reconstructed on December 17, 2014.  Mr. Cagwin's deposition was taken in April 2015.  *See* ECF No. 96-1.

The fact discovery cutoff was February 17, 2015.  Order (ECF No. 77) at PageID #: 397, ¶ 1.[7]  The dispositive motion cutoff date was May 1, 2015.  *See* Non-document Order entered March 17, 2015.

## II.

### A.  Timeliness of the Motion

In *Goodman v. Praxair Services, Inc.*, 632 F. Supp.2d 494 (D.Md. 2009), the district court provided a useful summary of the law regarding the timeliness of spoliation motions:

> First, key to the discretionary timeliness assessment of lower courts is how long after the close of discovery the relevant spoliation motion has been made.  Second, a court should examine the temporal proximity between a spoliation motion and motions for summary judgment.  Third, courts should be wary of any spoliation motion made on the eve of trial.  Fourth, courts should consider whether there was any governing deadline for filing spoliation motions in the scheduling order issued pursuant to Fed. R. Civ. P. 16(b) or by local rule.  Finally, the explanation of the moving party as to why the motion was not filed earlier should be considered.

*Id.* at 506-508 (internal quotation marks, alteration, footnote, and citations omitted).  "[T]here is a particular need for these motions to be filed as soon as reasonably possible after discovery of

---

[7]  The parties were granted multiple extensions of time to complete expert discovery.  *See* ECF Nos. 77, 84, and 89.  The final expert discovery cutoff was October 30, 2015.  Minutes of Proceedings dated May 22, 2015.

(4:13CV0185)

the facts that underlie the motion." *Id.* at 508.  Consequently, "[f]ederal district courts have held

that an unreasonable delay can render a spoliation motion untimely." *Cottle-Banks v. Cox*

*Communications, Inc.*, No. 10cv2133–GPC (WVG), 2013 WL 2244333, at *16 (S.D. Cal. May

21, 2013) (citing *Goodman*, 632 F. Supp.2d at 505-508).

> Plaintiff argues that Defendants discovered the facts that underlie the within motion on
February 14, 2014 when Plaintiff served Defendants with copies of the photographs and videos
taken in March 2012 as part of his discovery responses.  ECF No. 99 at PageID #: 783.  The
motion was not filed, however, until May 1, 2015[8]— over fourteen (14) months later, and almost
two and one half (2 1/2) months after the fact discovery cutoff.

> Defendants respond they did not have grounds to file the within motion until they took
the deposition of Mr. Cagwin on April 10, 2015.  Mr. Cagwin testified:

> > Q       Mr. Cagwin, just so I'm clear, can we agree Mr. Keck could not
> > have been tied off while ascending or descending the ladder.
> > A       Again, he could have been near the top of the ladder.  Based on
> > what he said his normal procedure was, that's not what he normally would do.  He
> > certainly could have.
> > Q       And how so.  How is that possible.
> > A       Because the tether extended or the tree strap as you're calling it
> > extended about a foot or so below the level of the tree stand.  So he could have --
> > as he approached the top, he could have connected himself to that before he got
> > onto the tree stand.  So in terms of an absolute, he could have.

---

[8]  The dispositive motion cutoff date.

9

(4:13CV0185)

ECF No. 96-1 at PageID #: 626. According to Defendants, it was only after Mr. Cagwin testified at deposition it may have been "possible" for Mr. Keck to have tied-in from the ladder that Plaintiff's disassembly of the tree stand in 2012 become ripe. ECF No. 108 at PageID #: 1268.[9]

Defendants do not, however, explain how the December 8, 2014 report of Dr. Malguarnera, their engineering expert (ECF No. 108-2 at PageID #: 1292-1300), relates to the timeliness of the within motion. In relevant part, Dr. Malguarnera expressed his professional opinion that the Defendants' ability to defend the products liability claim in the case at bar had been materially compromised as a direct result of Mr. Lewis's disassembly of the tree stand at the direction of Attorneys Carlin and Tater on March 28, 2012,[10] because it deprived Defendants of taking critical measurements. These measurements would probably have established that Plaintiff could not have been "tied-in" if he fell from the ladder on November 12, 2011, as he claimed to hospital personnel, even if he had been wearing the safety harness (and Defendants do not believe he was, based upon the testimony of the paramedics and the records from the hospital and EMS). ECF No. 108-2 at PageID #: 1297-99.

---

[9] Attorney Carlin subsequently offered an explanation for why Attorney Tater stated in his October 29, 2014 email to Defense counsel that the tether had been stolen when that very strap was available at Mr. Cagwin's deposition. *See* Deposition of Salvatore C. Malguarnera, Ph.D., P.E. (ECF No. 98-1) (taken on May 21, 2015) at PageID #: 756, Page 177 and 757, Page 181. Defendants contend they did not know the tree strap Plaintiff alleged he used on the day he fell was in existence until Mr. Cagwin's deposition. Affidavit of Bradley L. Snyder, Esq. (ECF No. 108-3) at ¶ 2; Affidavit of John A. Fiocca, Esq. (ECF No. 108-4) at ¶ 2.

[10] Dr. Malguarnera also states the date was April 28, 2012. *See* ECF No. 108-2 at PageID #: 1297.

(4:13CV0185)

The Court concludes the within motion is not untimely.  While it could probably have been filed shortly after Defendants received the December 8, 2014 report of Dr. Malguarnera, the Court needs to factor in Plaintiff counsel's failure to communicate until April 10, 2015 that they possessed the strap that Attorney Tater claimed was stolen some time before October 2014. Accordingly, the Court concludes filing the within motion on May 1, 2015 is not an unreasonable delay.

### B.  Conditions for Spoliation of Evidence

Plaintiff's claims center on the defective safety harness and strap with D-ring.  Plaintiff argues he was wearing the safety harness when the strap with D-ring detached and he fell.  There are no allegations by Plaintiff that the tree stand, tree belt or ladder were defective.  ECF No. 99 at PageID #: 789-90.

Defendants categorize the evidence at issue as "highly probative" and that, as a result, they are "unable to effectively defend against the Plaintiff's causes of action."  ECF No. 95 at PageID #: 476.  According to Defendants, whether it was even possible for Plaintiff to have "tied-in" while still on the ladder, has become the critical issue in this case with respect to the spoliation of evidence issue.  ECF No. 108 at PageID #: 1267-68.  The answer to this question depends entirely upon the spatial relationship of the various tree stand components as they existed at the time of the incident on November 12, 2011.  The distance between the platform, seat, tether, tree belt and harness, would have shown where on the platform one could have stood while still being secured by the tether.  ECF No. 95 at PageID #: 470.

(4:13CV0185)

Plaintiff contends it would have been easy to replace the tree stand and safety belt at any time and take measurements because when the tree stand was disassembled, it left indentations and markings from the straps, as well as fragments of the straps in the tree. ECF No. 99-1 at PageID #: 793, ¶ 10.  In fact, that is what Mr. Cagwin did on December 17, 2014 in response to Dr. Malguarnera's December 8, 2014 report (ECF No. 108-2 at PageID #: 1292-1300).

"'Spoliation is defined as the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction.'" *United States v. Spalding*, 438 Fed.Appx. 464, 467 (6th Cir. 2011) (quoting *United States v. Boxley*, 373 F.3d 759, 762 (6th Cir. 2004)) (citation omitted).  Intentional destruction is defined "not as a knowing and willful removal of evidence, but as removal with the purpose of rendering it inaccessible or useless to the defendant in preparing its case; that is, spoiling it." *Boxley*, 373 F.3d at 762 (internal quotation marks omitted).

A district court can sanction a litigant for spoliation of evidence if the following three conditions are met:

> (1) "the party with control over the evidence must have had an obligation to preserve it at the time it was destroyed," (2) "the accused party must have destroyed the evidence with a culpable state of mind," *and* (3) "the destroyed evidence must be relevant to the other side's claim or defense."

*Rutherlan Enterprises, Inc. v. Zettler Hardware*, 60 F. Supp.3d 828, 835 (S.D. Ohio 2014) (emphasis added) (quoting *Byrd v. Alpha Alliance Ins. Corp.*, 518 Fed.Appx. 380, 384 (6th Cir. 2013) (citing *Beaven v. U.S. Dept. of Justice*, 622 F.3d 540, 553 (6th Cir. 2010)).  A finding that any one of the prongs is not satisfied is grounds for denying the claim. *Adkins v. Wolever*, 692

12

(4:13CV0185)

F.3d 499, 504 (6th Cir. 2012).  Sanctions can include, among other things, "dismissing the case, granting summary judgment, or imposing an adverse inference based on the lost or destroyed evidence." *Johnson v. Metro. Gov't of Nashville and Davidson Cnty., Tenn.*, 502 Fed.Appx. 523, 531 (6th Cir. 2012).  "Dismissal should rarely be imposed and only when significant prejudice results from the evidence's destruction." *Byrd*, 518 Fed.Appx. at 386.

While Defendants could have learned about the spatial relationship of the various tree stand components as they existed on March 28, 2012 had Plaintiff's counsel contacted Defendant Gander Mountain Company in March 2012, that is not to say they remained unchanged from the time of the incident on November 12, 2011 until March 28, 2012.  After all, Plaintiff's tree stand was located on land he did not own, and the Holler family allowed other hunters besides Plaintiff to use it.  *See Smith v. Norcold, Inc.*, No. 13-10841, 2014 WL 5817258, at *6 (E.D. Mich. Nov. 10, 2014) ("the duty to preserve evidence does not extend to evidence which is not in a litigant's possession or custody and over which the litigant has no control"); *Rodriguez v. Torres*, No. 11-1602 (MEL), 2015 WL 1138256, at *18 (D. Puerto Rico March 13, 2015) (defendant did not show that sanctions for spoliation were justified when no evidence had been provided that plaintiffs were in control of the boat or the stolen hydraulic steering system after the incident occurred, such that they did not adequately safeguard the evidence).  Moreover, a tree stand belonging to Plaintiff had previously been stolen out of the tree.

Defendants apparently did not request a site inspection until October 27, 2014.  ECF No. 95-2.  Defendants argue

13

(4:13CV0185)

> Given that [Attorney Tater] reported on October [23, 2014] that "[t]o the best of
> my knowledge" the tether "may still be in the same place," it is clear that neither
> Mr. Keck nor the attorneys checked on the tether or ladder from [March] 28, 2012
> until specifically requested to do so by Defendants.  This exchange shows the
> total disregard of Plaintiff to make *any affirmative effort* to secure the evidence
> that is the basis of their claims against Defendants.

ECF No. 95 at PageID #: 474 (emphasis in original).  The same, however, can be said about

Defendants.  After all, Gander Mountain Company was served on or about January 28, 2013, *see*

ECF No. 3, and Kinsey's Archery Products, Inc. was served on or about August 19, 2013, *see*

ECF No. 46.  Therefore, it appears neither Defendants nor their attorneys requested a site

inspection until well over a year after being served with summons and complaint in the case at

bar.  This could also show the total disregard of Defendants to make any affirmative effort to

secure the evidence that is the basis of their defenses to Plaintiff's claims.

Determining a party's culpability is "fact-intensive," *Adkins v. Wolever*, 554 F.3d 650,

653 (6th Cir. 2009), as the "veracity of [defendant's] stated reasons for destroying the [evidence]

'is an issue of credibility best left for trial.'" *Beaven*, 622 F.3d 554 (quoting *Kronisch v. United*

*States*, 150 F.3d 112, 127 (2d Cir. 1998), *overruled on other grounds by Rotella v. Wood*, 528

U.S. 549 (2000)).

Plaintiff maintains all of the relevant evidence from the location where Plaintiff fell was

removed and carefully preserved.  ECF No. 99 at PageID #: 779.  As is evident from the fate of

the ladder, had Plaintiff not removed the safety harness and the detached strap with D-ring, and

later the tree stand, straps, and safety belt, he could not have insured their later availability.  ECF

No. 99 at PageID #: 786.  *Thompson, I.G., L.L.C. v. Edgetech I.G., Inc.*, No. 11-12839, 2013 WL

14

(4:13CV0185)

3353907, at *7 (E.D. Mich. July 3, 2013) ("The record does not support a finding that [plaintiff] intentionally destroyed windows to seek a tactical advantage in this case.  To the contrary, to the extent that any windows were destroyed, [plaintiff's] case is now harder to prove.").

In *Flint Hills Resources LP v. Lovegreen Turbine Services, Inc.*, No. 04-4699 (JRT/FLN), 2006 WL 2472819 (D. Minn. Aug. 25, 2006), the plaintiff sued the defendant for damages caused when one of defendant's employees left a cloth rag in plaintiff's gas compressor.  Defendant contended that the plaintiff committed spoliation of evidence by inspecting and repairing the compressor without first calling defendant and giving it the opportunity to inspect the compressor.  *Id.* at *4.  Plaintiff documented the inspection and repair with photographs and notes, and saved all rag fragments.   Based on all the circumstances, the court found that the plaintiff's immediate inspection and repair of the compressor was not an intentional act of destruction of evidence, but was rather part of its effort to mitigate damages, and that plaintiff took all reasonable steps to preserve evidence.  Therefore, the court denied the defendant's motion for summary judgment on spoliation grounds.  *Id.* at *5.

In *Cawley v. Eastman Outdoors, Inc.*, No. 1:14CV0310, 2015 WL 196052 (N.D. Ohio Jan. 14, 2015) (Gwin, J.), an action about the plaintiff's injury from an allegedly defective arrow distributed by the defendant, defendant argued that evidence relating to the exemplar arrow should be excluded for spoliation.  The court found the defendant failed to show that the exemplar arrow was "destroyed" and defendant did not make a convincing showing that plaintiff's expert's sectioning of the exemplar impaired any ability to respond to the plaintiff's

15

(4:13CV0185)

claims. The court also found the defendant had not established that the plaintiff acted with a "culpable state of mind." *Id.* at *8.

Defendants argue the most similar case to the present attorney-driven spoliation is *Silvestri v. General Motors Corp.*, 271 F.3d 583 (4th Cir. 2001). ECF No. 108 at PageID #: 1278. The Sixth Circuit in *Beaven* cited favorably to *Silvestri*. *See Beaven*, 622 F.3d 555. In *Silvestri*, the Fourth Circuit affirmed a district court's imposition of a dismissal sanction when the plaintiff's failure to preserve the automobile at the center of the products liability suit against General Motors denied General Motors "access to the *only evidence* from which it could develop its defenses adequately." *Id.* at 594 (emphasis added). Without access to the automobile, General Motors could not develop a "crush" model to prove that the air bag properly failed to deploy, nor could it resolve "the critical question of how [the plaintiff] injured his head." *Id.* The Fourth Circuit further found that the evidence that had been preserved was "incomplete and indefinite," and to require General Motors to rely on it in lieu of what it could have collected "would result in irreparable prejudice." *Id.* "[D]ismissal is severe and constitutes the ultimate sanction for spoliation. It is usually justified only in circumstances of bad faith or other like action. But even when conduct is less culpable, dismissal may be necessary if the prejudice to the defendant is extraordinary, denying it the ability to adequately defend its case." *Id.* at 593 (internal quotation marks and citation omitted).

Unlike *Silvestri*, Defendants have evidence from which they could develop their case. Defendants have access to the safety harness and the detached strap with D-ring, as well as the

16

(4:13CV0185)

tree stand, straps, and safety belt.  There are many photographs and two (2) videos of the

location where Plaintiff fell.  Moreover, the disassembly of the tree stand left indentations and

markings from the straps, as well as fragments of the straps in the tree.  ECF No. 96-1 at PageID

#: 634.  According to Plaintiff, the items can be replaced to their exact positions.  ECF No. 99 at

PageID #: 786.

**III.**

Defendants Gander Mountain Company and Kinsey's Archery Products, Inc.'s Motion

for Sanctions for Spoliation of Evidence (ECF No. 95) is denied.


IT IS SO ORDERED.


 November 4, 2015                          /s/ Benita Y. Pearson         
Date                                          Benita Y. Pearson
                                          United States District Judge